# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Chapter 13 |
| KAREN GEORGE, | : | BANKR. NO. 13-20185REF |
| _____ Debtor | : | |
| In re: | : | Chapter 13 |
| KAREN GEORGE, | : | BANKR. NO. 14-11448REF |
| _____ Debtor | : | |
| In re: | : | Chapter 11 |
| CROHEL, INC., | : | BANKR. NO. 15-17613REF |
| _____ Debtor | : | |
| In re: | : | CHAPTER 13 |
| HENRY NATHANIEL SMITH, III, | : | BANKR. NO.  16-10397REF |
| _____ Debtor | : | |
| In re: | : | CHAPTER 13 |
| MARGUERITE M. RUSYN, | : | BANKR. NO.  16-10755REF |
| _____ Debtor | : | |
| In re: | : | CHAPTER 13 |
| ZYVETTE ALVARADO, | : | BANKR. NO. 16-13259REF |
| _____ Debtor | : | |
| In re: | : | CHAPTER 13 |
| BEATRIZ PENA, | : | BANKR. NO. 16-14189REF |
| _____ Debtor | : | |
| In re: | : | CHAPTER 13 |
| MIGUEL AMARO, | : | BANKR. NO. 16-14857REF |
| _____ Debtor | : | |
| In re: | : | CHAPTER 13 |
| CARLOS GONZALEZ, | : | BANKR. NO. 16-15181REF |
| _____ Debtor | : | |
| In re: | : | CHAPTER 13 |
| RANDALL COINE, | : | BANKR. NO. 16-15569REF |
| _____ Debtor | : | |
| In re: | : | CHAPTER 13 |
| THOMAS CUSHING, | : | BANKR. NO. 16-15570REF |
| _____ Debtor | : | |

1

| | | |
|---|---|---|
| In re: | : | CHAPTER 13 |
| SALVATORE RIZZO, JR., | : | BANKR. NO. 16-15571REF |
| _____ Debtor | : | |
| In re: | : | CHAPTER 13 |
| ERIC SIMMONS, | : | BANKR. NO. 16-15572REF |
| _____ Debtor | : | |
| In re: | : | CHAPTER 13 |
| DOLORES YENIK, | : | BANKR. NO. 16-17118REF |
| _____ Debtor | : | |
| In re: | : | CHAPTER 13 |
| WILLIAM F. ROBERTS, JR., | : | BANKR. NO. 16-17119REF |
| _____ Debtor | : | |
| In re: | : | CHAPTER 13 |
| CRAIG A. BOWES, | : | BANKR. NO. 16-17586REF |
| _____ Debtor | : | |
| In re: | : | CHAPTER 13 |
| RANDALL COINE, | : | BANKR. NO. 16-17887REF |
| _____ Debtor | : | |
| In re: | : | CHAPTER 13 |
| GRULLON KELVIS, | : | BANKR. NO. 17-12008REF |
| Debtor | : | |

# MEMORANDUM  OPINION

# I.  INTRODUCTION

Frustration and disappointment.

I cannot go into the factual and legal discussion of the above cases

without experiencing frustration and disappointment upon the conduct of counsel

for the debtors in the above cases.[1] When I was an attorney, I would have

flinched if I thought I missed a single deadline. I would melt if I even came close

to doing something that might have caused a client's matter to be prejudiced. I

went into hyper-alert status if I thought I might have done something that caused

a client to lose all benefit from the fee paid to me for a negative result that was

my fault. I confess to carrying those feelings and attitudes to the bench 11 years

ago. I never dreamed that attorneys would conduct themselves so poorly that

sanctions were not only justified, but were required. Yet, here I am – sanctioning

counsel in the above cases for, inter alia, his failure to provide fee information as

required by the Bankruptcy Code, his failure to explain to his clients what he was

doing to/for them in filing bankruptcies, his misrepresentations to the Court, his

failure in following directions to him through my orders, and in general his

unprofessional conduct and bad faith in representing his clients in the above-

captioned cases.

---

[1]      Four of the above-captioned cases were not in the mainstream of my examination of counsel's
behavior in this Court. The two Chapter 13 cases for Karen George and the lone Chapter 11 filed for
Crohel, Inc., were filed and dismissed well before I became aware of counsel's conduct in the other
cases. And the last case, a Chapter 13 filed for Grullon Kelvis, was filed after the filing of the large bulk
of the cases and was not included in an order to show cause, various motions of the United State
Trustee, or in the hearings arising therefrom. Those four cases, however, duplicate the inattention and
gross negligence of counsel displayed in the bulk of these cases. Crohel's Chapter 11 case is entirely
different and is not included in the remedies discussed in this Memorandum Opinion.

# II.  BACKGROUND

I will present the facts relevant to this decision on a case-by-case basis. Counsel for the debtor in all of the above cases was Matthew T. Croslis, Esquire ("Croslis"). Although many of Croslis' actions and inactions on the docket were repeated in all of the cases he filed, some actions were unique to a particular case or cases. The case-by-case review, rather than a general description of what Croslis did, is therefore necessary.

## A.    Initial Bankruptcy Practice

Although not presented as part of the case advanced by the United States Trustee (the "UST"), I have examined earlier years of Croslis' practice as found in the dockets and records of this Court. I take judicial notice of those dockets and records.[2] In cases filed from 2003 through 2005, Croslis entered his

---

[2]      I may take judicial notice, under Fed. R. Evid. 201 (incorporated into bankruptcy cases by Fed. R. Bankr. P. 9017), of the docket entries and the bankruptcy petition, schedules, and statement of financial affairs filed in this case. See Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1200 n.3 (3d Cir. 1991); Levine v. Egidi, No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. March 8, 1993); In re Paolino, No. 85-00759F, 1991 WL 284107, at *12 n.19 (Bankr. E.D. Pa. Jan. 11, 1991); see generally Nantucket Investors II v. California Federal Bank, (In re Indian Palms Assoc., Ltd.), 61 F.3d 197 (3d Cir. 1995). Although I may not take judicial notice of the facts contained in the debtors' files that are in dispute, In re Augenbaugh, 125 F.2d 887 (3d Cir. 1942), I may take judicial notice of adjudicative facts "not subject to reasonable dispute . . . [and] so long as it is not unfair to a party to do so and does not undermine the trial court's fact finding authority." Indian Palms, 61 F.3d at 205 (citing Fed. R. Evid. 201(f) advisory committee note (1972 proposed rules)).

appearance and that of the law firm[3] in which he was an attorney primarily as

representing creditors. From some time in 2005 or 2006 or so, Croslis no longer

appeared in any bankruptcy cases in this Court – until 2013.

## B.      <u>The First Three Debtors' Cases</u>

Croslis was counsel for debtor Karen George in two unsuccessful

Chapter 13 bankruptcy filings -- Nos. 13-20185 and 14-11448. The first case

was filed in the end of 2013 and was dismissed shortly thereafter because Croslis

failed to file the required bankruptcy documents. Croslis also failed to file a

2016(b) statement of the compensation he had received from Ms. George. His

representation of Ms. George in 2014 was déjà vu all over again. Ms. George

filed a second Chapter 13 case in early 2014, which case was dismissed for the

same failure of Croslis to file the required bankruptcy documents. Croslis failed

again to file his 2016(b) statement of the compensation he had received from Ms.

George.

In October 2015, Croslis filed a Chapter 11 bankruptcy, <u>Crohel, Inc.</u>,

No. 15-17613. Crohel was a company owned at least in part by Croslis and he

acted as its counsel in the failed Chapter 11. Again, Croslis failed to file debtor's

required bankruptcy documents. And again, he failed to file his 2016(b) fee

---

[3]      His law firm in those early years was (and is today) well respected.

disclosure statement. Croslis asked for and received an additional seven days to

file the required bankruptcy documents for Crohel, but then he filed only a few of

them. The schedules he filed were insulting.

Croslis identified only one parcel of real estate of which Crohel was

the "legal owner" and a single checking account as all of the assets owned by

Crohel in its Schedules A (Real Property) and B (Personal Property). Although

its Schedule A showed a debt secured by the real property, Croslis failed to file a

Schedule D (Creditors Holding Secured Claims).[4] At least one local taxing

authority entered its appearance in the case, which tells me that he also had at

least some delinquent local real estate taxes that he failed to disclose somewhere.

His Schedule F (Creditors Holding Unsecured Nonpriority Claims) was marked

"None," as was the List of Creditors Holding 20 Largest Unsecured Claims. It is

difficult to believe that Crohel had no unsecured creditors whatsoever. Croslis

claimed in Schedule A that Crohel owned its real estate, Crohel's Schedule G

(Executory Contracts and Unexpired Leases) identified the premise as rented to

or for Lehorc, LLC,[5] subject to an executory contract.

---

[4]      Croslis failed to file a Schedule D, but he identified some secured debt in a general summary of
Crohel's assets and liabilities.
[5]      Croslis cleverly used the name Crohel backwards as the name of the counter-party to the
executory contract, which I assume was a rental agreement of unknown terms. I cannot tell from the
filings whether Crohel is the landlord or the tenant.

Croslis failed to file a proposed plan of reorganization and disclosure statement, a statement of financial affairs, monthly operating reports, and an application for Croslis to be retained as counsel, which would have included the details of his fee in compliance with Rule 2016(b). Croslis also failed to attend the meeting with creditors as required by Section 341(a) of the Bankruptcy Code. In late December 2015, the UST moved to dismiss Crohel's Chapter 11 case because of the missing documents. In January 2016, I granted the unopposed motion and dismissed <u>Crohel</u>. Because the only entity who might have been hurt was Crohel, which was Croslis' own company, <u>Crohel</u> will not be considered with the other cases in the disgorgement or sanctions sections of this Memorandum Opinion.

None of these three older cases was part of the case made by the UST and none of these cases was the subject of any current order by me, whether to show cause or otherwise. I have nevertheless included these three cases in this Memorandum Opinion because they involve Croslis' actions and inactions as counsel for debtors in bankruptcy. His conduct in the two consumer Chapter 13 cases, <u>In re George</u>, was very similar to that in the bulk of his later cases. The <u>George</u> cases will be included in my review and conclusions.[6]

---

[6]    I do not include among the earlier cases, the case in <u>In re Demenno</u>, No. 14-19905, in which Croslis appeared in the capacity of a real estate agent. In March 2015, I granted the debtor's application

## C.        The Last (Most Recent) Case

At the March 23, 2017 hearing (which Croslis did not attend) in the above cases, I announced that I would bar Croslis from filing any new bankruptcy cases and that I would revoke his privilege to use the CM/ECF (case management/electronic case filing) system. On March 24, 2017, a few hours before I issued the written Order confirming my bar against Croslis, he filed a new Chapter 13 case, In re Grullon Kelvis, No. 17-12008. Yet again, Croslis failed to file the required bankruptcy documents, including his 2016(b) fee disclosure statement. On April 12, 2017, the UST filed a motion to deny and disgorge all of Croslis' fees in Kelvis, and to impose sanctions against Croslis in Kelvis. On April 18, 2017, I entered an Order (which was perhaps duplicative) for Croslis to show cause why I should not sanction him for his further unprofessional behavior in Kelvis. The UST and I scheduled hearings in Kelvis on May 25, 2017, for both the UST motion for disgorgement and sanctions and my show cause order.

---

to appoint Croslis to sell the debtor's property in Demenno. Croslis failed to bring a buyer to the before the case was converted to Chapter 7 nearly two years later, on February 22, 2017.

Case 16-17586-ref    Doc 11    Filed 05/24/17    Entered 05/24/17 10:45:45    Desc Main
Document    Page 9 of 64

## D.    <u>The Thirteen Cases</u>[7]

The thirteen cases filed by Croslis from January 21, 2016 through November 10, 2016, (together, the "Thirteen Cases") constitute the bulk of the matters that I examine in this Memorandum Opinion. The Thirteen Cases are all of the cases Croslis filed in 2016. None of them were successful in bankruptcy. All of the cases were specifically called to my attention by the UST through its motions in the last few months of 2016 and the first few months of 2017. My case-by-case description of each of the Thirteen Cases follows:

1.  <u>In re Henry N. Smith, III</u>, No. 16-10397.

    a.  Jan 21, 2016 – Case filed.

    b.  Jan 21, 2016 - Notice of deficient filing – missing certain required bankruptcy documents, including 2016(b) statement.

    c.  Feb 16, 2016 - Case dismissed for failure to file required documents.

    d.  Sep 14, 2016 – Case is re-opened for the sole purpose of disposing of the issue of disgorgement of all fees collected by Croslis, who is ordered to appear at the hearing on disgorgement on Sep 22, 2016.

---

[7]    Of the Thirteen Cases in this section, two are for the same debtor – Randall Coine.

e.  Sep 16, 2016 – Hearing rescheduled to October 27, 2016.

f.  Sep 21, 2016 – Hearing on an order to show cause, which was
    rescheduled from October 27, 2016 to November 3, 2016.

g.  Nov 3, 2016 – Hearing on disgorgement of fees was held with
    Croslis present. Croslis testified at length about his very bad year
    with his family's health. He testified that his father passed away
    in June. He further testified that he was not dishonest and
    intended to help each of his debtor clients. He blamed his being
    disorganized for his problems. To remedy his delinquency, he
    testified that he had hired a paralegal, partnered with another
    bankruptcy attorney who would mentor him, and bought a
    comprehensive set of bankruptcy software. His strategy was to
    market to debtors who were about to have their homes
    foreclosed. He would file what amounts to a strike suit, stop the
    state court foreclosure proceedings, and negotiate a modification
    of his clients' mortgages. He testified that he was prepared to
    take all of the cases forward. His standard fee agreement is
    $3,500 to represent his clients in their effort to modify their
    mortgage and to file bankruptcy if needed. He testified that
    $1,750 of the fee was allocated for the mortgage modification

and $1,750 was allocated for the bankruptcy. Despite this
allocation, Croslis kept the entire fee if the mortgage
modification was successful. The UST correctly responded that
all fees relating to the clients' financial difficulties must be
disclosed – the total fees for both mortgage modification and
bankruptcy. The UST noted that Croslis could allocate his total
fee however he wanted in Paragraph 7 of the Statement of
Financial Affairs. The UST pointed out that filing a bankruptcy
solely to stop a sheriff's sale was arguably prohibited. The UST
also pointed out that at least one of Croslis' clients could make
no monthly payments in the Chapter 13 case and had asked
Croslis for help. But, she said, Croslis did nothing. Croslis
declined to provide any further explanations saying, "Not today,
knowing that I'm gonna have to file these." The UST told Croslis
that he was open to discussing matters with him. Croslis said he
would do so. The hearing was continued to Dec 15, 2016, to
allow Croslis to take steps to explain more fully what he had
done in each case, to file missing compensation documents, and
to rehabilitate his clients' cases.[8]

---

[8]       No transcript of the November 3, 2016 hearing exists. I listened to the audio recording of the
hearing and include excerpts from the testimony and argument.

h. Dec 15, 2016 – Hearing on filing fee disclosure documents and

disgorgement of fees. Croslis intended to go through the list of

his cases and describe what he had done and what remained to be

done. The UST gave an overall outline to be followed: Croslis

must account for all credit counseling, all 2016(b) statements, all

fees that were paid and for what services they were paid, whether

for the mortgage modification work or for the bankruptcy.

Croslis told the UST that he had intended to have filed some

documents the prior evening, but he did not. Croslis said he had

been unable to file them because he could not get on-line the

prior evening.[9] He said he would file all compensation

documents the next day, Friday, December 16, 2016. He failed to

do so. He once again referred to health issues, saying he had

another death and a severe heart attack in his family. He did not

describe specifically how it took his time and prevented him from

filing the papers the day before. He claimed once again that he

intended to catch up with the missing documents. The hearing

was continued to January 19, 2017, to allow Croslis to file the

---

[9]     Today, this excuse is as credible as the dog having eaten his homework. Of the hundreds of attorneys who access and file bankruptcy court documents on a daily basis, it is a rare instance in which someone could not "get on-line."

missing documents by January 6, 2017. Croslis further agreed to refile for any debtor/client who had not received credit counseling prior to filing his/her case. I warned Croslis that if he did not perform all tasks, including refiling the cases that needed it and delivering status reports to the UST and Court chambers by January 6, 2017, he would be subject to sanctions as well as disgorgement of fees.[10]

i. Dec 16, 2016 – An Order was entered vacating the prior dismissal of the case and requiring Croslis to provide certain specified information about his fees to the UST and to the Court and to file all missing bankruptcy documents (the "Fee Order").

j. Jan 6, 2017 – Attorney 2016(b) fee disclosure filed.

k. Jan 19, 2017 – Croslis failed to attend the hearing. A bench order was entered at this hearing. The hearing was continued to February 16, 2017, because Croslis failed to appear and the UST intended to move to have Croslis determined to be in contempt, among other relief.

l. Feb 15 & 16, 2017 – More than five weeks after the date required by the Fee Order, Croslis delivered his response dated February

---

[10]   No transcript of the December 15, 2016 hearing exists. I listened to the audio recording of the hearing and include excerpts from the testimony and argument.

13

15, 2017, to the UST on February 15, 2017, and he delivered a

response dated January 18, 2017 to the Court on February 16,

2017 (the "Status Reports"). Croslis provided no explanation why

the identical Status Reports had such different dates. His

description of the 2016(b) disclosure statements in the Status

Report differs from what was in the Jan 6, 2017 fee disclosures.[11]

m. Feb 16, 2017 – Another bench order (effectively same as that

entered at Jan 19, 2017 hearing) was entered at the hearing.

Croslis trestified that he had hired counsel to represent some

clients that were on the docket. The hearing was continued to

March 23, 2017, to allow the UST to prepare a full-blown motion

that informed Croslis what was being argued against him.[12]

n. Feb 24, 2017 - The UST filed his motion (the "UST Motion")

against Croslis in the Thirteen Cases. The UST moved to (i)

compel Croslis to account for his fees, (ii) deny any fees

requested by Croslis, (iii) compel the disgorgement of all fees

Croslis received from the debtors in the Thirteen Cases, (iv)

---

[11]    The two differently dated Status Reports that Croslis delivered to the UST and this Court were intentionally suggested by the UST to be delivered rather than being filed. In this way, the UST sought (and I agreed) to alleviate some of the potential for embarrassment that Croslis' conduct might elicit in the eyes of his clients. That concern no longer exists.
[12]    No transcript of the February 16, 2017 hearing exists. I listened to the audio recording of the hearing and include excerpts from the testimony and argument.

impose sanctions or civil penalties on Croslis, (v) enjoin future

violations of the Bankruptcy Code, and (vi) find Croslis in

contempt of court.

    o. Mar 23, 2017 – Once again, Croslis failed to appear at the

hearing and I took this matter under advisement.

2. In re Marguerite M. Rusyn, No. 16-10755.

    a. Feb 4, 2016 – Case filed.

    b. Feb 4, 2016 - Notice of deficient filing – missing certain

       required bankruptcy documents, including 2016(b)

       statement.

    c. Feb 24, 2016 - Case dismissed for failure to file required

       documents.

    d. Sep 14, 2016 – Order that case is reopened and Croslis is

       ordered to show cause why all fees collected in this case

       should not be disgorged by Croslis, who is ordered to

       appear at the hearing on Sep 22, 2016.

    e. Sep 16, 2016 – Hearing rescheduled to October 27, 2016.

    f. Sep 21, 2016 – See Paragraph II.D.1.f, above.

    g. Nov 3, 2016 – See Paragraph II.D.1.g, above.

    h. Dec 15, 2016 – See Paragraph II.D.1.h, above.

i.   Dec 16, 2016 – <u>See</u> Paragraph II.D.1.i, above.

j.   Jan 6, 2017 – Attorney 2016(b) fee disclosure filed.

k.   Jan 19, 2017 – <u>See</u> Paragraph II.D.1.k, above.

l.   Feb 15 & 16, 2017 – <u>See</u> Paragraph II.D.1.l, above.

m.  Feb 16, 2017 – <u>See</u> Paragraph II.D.1.m, above.

n.   Feb 24, 2017 – <u>See</u> Paragraph II.D.1.n, above.

o.   Mar 23, 2017 – Croslis failed to appear at the hearing and
     I took this matter under advisement.

3.  <u>In re Zyvette Alvarado</u>, No. 16-13259.

a.   May 6, 2016 – Case filed.

b.   May 6, 2016 - Notice of deficient filing – missing certain
     required bankruptcy documents, including 2016(b) statement.

c.   Jun 7, 2016 - Case dismissed for failure to file required
     documents.

d.   Sep 14, 2016 – Order that case is reopened and Croslis is
     ordered to show cause why all fees collected in this case
     should not be disgorged by Croslis, who is ordered to appear
     at the hearing on Sep 22, 2016.

e.   Sep 16, 2016 – Hearing rescheduled from September 22,
     2016, to October 27, 2016.

    f.  Sep 21, 2016 – <u>See</u> Paragraph II.D.1.f, above.

    g.  Nov 3, 2016 – <u>See</u> Paragraph II.D.1.g, above.

    h.  Dec 15, 2016 – <u>See</u> Paragraph II.D.1.h, above.

    i.  Dec 16, 2016 – <u>See</u> Paragraph II.D.1.i, above.

    j.  Jan 6, 2017 – Attorney 2016(b) fee disclosure filed.

    k.  Jan 19, 2017 – <u>See</u> Paragraph II.D.1.k, above.

    l.  Feb 15 & 16, 2017 – <u>See</u> Paragraph II.D.1.l, above.

    m.  Feb 16, 2017 – <u>See</u> Paragraph II.D.1.m, above.

    n.  Feb 24, 2017 – <u>See</u> Paragraph II.D.1.n, above.

    o.  Mar 23, 2017 – Croslis failed to appear at the hearing and I took this matter under advisement.

4.  <u>In re Beatriz Pena</u>, No. 16-14189.

    a.  Jun 10, 2016 – Case filed.

    b.  Jun 10, 2016 - Notice of deficient filing – missing certain required bankruptcy documents, including 2016(b) statement.

    c.  Jun 24, 2016 – Disclosure of compensation and many other required bankruptcy documents filed. But some required documents were not filed.

    d.  Sep 6, 2016 – Case dismissed.

e.  Sep 14, 2016 – Order to show cause why all fees collected should not be disgorged by Croslis, who is ordered to appear at the hearing on Sep 22, 2016.

f.  Sep 15, 2016 – original UST motion to deny fees and for Croslis to disgorge and return all fees.

g.  Sep 16, 2016 – Hearing rescheduled to October 27, 2016.

h.  Sep 21, 2016 – <u>See</u> Paragraph II.D.1.f, above.

i.  Nov 3, 2016 – <u>See</u> Paragraph II.D.1.g, above.

j.  Dec 15, 2016 – <u>See</u> Paragraph II.D.1.h, above.

k.  Dec 15, 2016 – Order entered denying Croslis' request for fees and requiring that Croslis disgorge all fees received from Ms. Pena and pay them to Ms. Pena.

l.  Jan 6, 2017 – Attorney 2016(b) fee disclosure filed.

m. Feb 15 & 16, 2017 – <u>See</u> Paragraph II.D.1.l, above.

n.  Jan 18, 2017 – thr new UST Motion filed against Croslis for contempt and sanctions.

o.  Jan 19, 2017 –The hearing on this date for the other Croslis cases did not include <u>In re Pena</u>.

p.  Feb 16, 2017 – <u>See</u> Paragraph II.D.1.m, above.

q. Mar 23, 2017 – Croslis failed to appear at the hearing and I took this matter under advisement.

r. Mar 23, 2017 – Order entered granting January 18 motion for contempt and sanctions against Croslis. The March 23 Order also required Croslis to certify to the Court and UST that he complied with the prior disgorgement and this Order. Croslis was warned that his failure to comply with this Order may result in further sanctions against him. The hearing was continued to April 27, 2017 to review and consider Croslis' compliance with the various orders. At the March 23 hearing, an order was tentatively entered granting the UST Motion for contempt and sanctions against Croslis. The hearing was continued to April 27, 2017.

s. Apr 27, 2017 – Croslis failed to appear at the hearing. The UST testified however, that Ms. Pena had informed him that Croslis refunded and delivered the full amount of her fee to her in the last couple weeks. Even in this gesture, Croslis erred. He mailed Ms. Pena's check to the wrong address and it took some time to get to Ms. Pena. But it did eventually get to her and In re Pena is no longer at issue in this Memorandum

Opinion. The UST was satisfied with the return of her fee to Ms. Pena and asked that the matter be closed. I agreed.

5. In re Miguel Amaro, No. 16-14857.

   a. Jul 8, 2016 – case filed.

   b. Jul 8, 2016 - Notice of deficient filing – missing certain required bankruptcy documents, including 2016(b) statement.

   c. Aug 24, 2016 - Case dismissed for failure to file required documents.

   d. Sep 14, 2016 – Case is re-opened for the sole purpose of disposing of the issue of disgorgement of all fees collected by Croslis, who is ordered to appear at the hearing on disgorgement on Sep 22, 2016.

   e. Sep 16, 2016 – Hearing rescheduled to October 27, 2016.

   f. Sep 21, 2016 – See Paragraph II.D.1.f, above.

   g. Nov 3, 2016 – See Paragraph II.D.1.g, above.

   h. Dec 15, 2016 – See Paragraph II.D.1.h, above.

   i. Dec 16, 2016 – See Paragraph II.D.1.i, above.

   j. Jan 6, 2017 – Attorney 2016(b) fee disclosure filed.

   k. Jan 19, 2017 – See Paragraph II.D.1.k, above.

l.   Feb 15 & 16, 2017 – <u>See</u> Paragraph II.D.1.l, above.

m. Feb 16, 2017 – <u>See</u> Paragraph II.D.1.m, above.

n.  Feb 24, 2017 – <u>See</u> Paragraph II.D.1.n, above.

o.  Mar 23, 2017 – Croslis failed to appear at the hearing and I
took this matter under advisement.

6. <u>In re Carlos Gonzalez,</u> No. 16-15181.

a. Jul 22, 2016 – Case filed.

b. Jul 22, 2016 - Notice of deficient filing – missing certain
required bankruptcy documents, including 2016(b) statement.

c. Aug 23, 2016 - Case dismissed for failure to file required
documents.

d. Sep 14, 2016 – Order that case is reopened and Croslis is
ordered to show cause why all fees collected in this case
should not be disgorged by Croslis, who is ordered to appear
at the hearing on Sep 22, 2016.

e. Sep 16, 2016 – Hearing rescheduled to October 27, 2016.

f. Sep 21, 2016 – <u>See</u> Paragraph II.D.1.f, above.

g. Nov 3, 2016 – <u>See</u> Paragraph II.D.1.g, above.

h. Dec 15, 2016 – <u>See</u> Paragraph II.D.1.h, above.

i. Dec 16, 2016 – <u>See</u> Paragraph II.D.1.i, above.

j. Jan 6, 2017 – Attorney 2016(b) fee disclosure filed.

k. Jan 19, 2017 – <u>See</u> Paragraph II.D.1.k, above.

l. Feb 15 & 16, 2017 – <u>See</u> Paragraph II.D.1.l, above.

m. Feb 16, 2017 – <u>See</u> Paragraph II.D.1.m, above.

n. Feb 24, 2017 – <u>See</u> Paragraph II.D.1.n, above.

o. Mar 23, 2017 – Croslis failed to appear at the hearing and I took this matter under advisement.

7.  <u>In re Randall Coine</u>, 16-15569.

a. Aug 5, 2016 – Case filed.

b. Aug 5, 2016 - Notice of deficient filing – missing certain required bankruptcy documents, including 2016(b) statement.

c. Sep 6, 2016 - Case dismissed for failure to file required documents.

d. Sep 14, 2016 – Croslis is ordered to show cause why all fees he collected in this case should not be disgorged, and he is ordered to appear at the hearing on Sep 22, 2016.

e. Sep 16, 2016 – Hearing rescheduled to October 27, 2016.

f. Sep 21, 2016 – <u>See</u> Paragraph II.D.1.f, above.

g. Nov 3, 2016 – <u>See</u> Paragraph II.D.1.g, above.

h. Dec 15, 2016 – <u>See</u> Paragraph II.D.1.h, above.

i. Dec 16, 2016 – <u>See</u> Paragraph II.D.1.i, above.

j. Jan 6, 2017 – Attorney 2016(b) fee disclosure filed.

k. Jan 19, 2017 – <u>See</u> Paragraph II.D.1.k, above.

l. Feb 15 & 16, 2017 – <u>See</u> Paragraph II.D.1.l, above.

m. Feb 16, 2017 – <u>See</u> Paragraph II.D.1.m, above.

n. Feb 24, 2017 – <u>See</u> Paragraph II.D.1.n, above.

o. Mar 23, 2017 – Croslis failed to appear at the hearing and I took this matter under advisement.

p. Croslis filed a second Chapter 13 for Mr. Coine later in 2016. (<u>See</u> No. 16-17887, discussed in more detail below.)

8. <u>In re Thomas Cushing</u>, No. 16-15570.

a. Aug 5, 2016 – case filed.

b. Aug 5, 2016 - Notice of deficient filing – missing certain required bankruptcy documents, including 2016(b) statement.

c. Sep 6, 2016 - Case dismissed for failure to file required documents.

d. Sep 14, 2016 – Croslis is ordered to show cause why all fees he collected in this case should not be disgorged, and he is ordered to appear at the hearing on Sep 22, 2016.

e. Sep 16, 2016 – Hearing rescheduled to October 27, 2016.

f. Sep 21, 2016 – <u>See</u> Paragraph II.D.1.f, above.

g. Nov 3, 2016 – <u>See</u> Paragraph II.D.1.g, above.

h. Dec 15, 2016 – <u>See</u> Paragraph II.D.1.h, above.

i. Dec 16, 2016 – <u>See</u> Paragraph II.D.1.i, above.

j. Jan 6, 2017 – Attorney 2016(b) fee disclosure filed.

k. Jan 19, 2017 – <u>See</u> Paragraph II.D.1.k, above.

l. Feb 15 & 16, 2017 – <u>See</u> Paragraph II.D.1.l, above.

m. Feb 16, 2017 – <u>See</u> Paragraph II.D.1.m, above.

n. Feb 24, 2017 – <u>See</u> Paragraph II.D.1.n, above.

o. Mar 23, 2017 – Croslis failed to appear at the hearing and I took this matter under advisement.

8. <u>Salvatore Rizzo, Jr.</u>, No. 16-15571.

a. Aug 5, 2016 – case filed.

24

b. Aug 5, 2016 - Notice of deficient filing – missing certain required bankruptcy documents, including 2016(b) statement.

c. Aug 31, 2016 - Case dismissed for failure to file required documents.

d. Sep 14, 2016 – Croslis is ordered to show cause why all fees he collected in this case should not be disgorged, and he is ordered to appear at the hearing on Sep 22, 2016.

e. Sep 16, 2016 – Hearing rescheduled to October 27, 2016.

f. Sep 21, 2016 – <u>See</u> Paragraph II.D.1.f, above.

g. Nov 3, 2016 – <u>See</u> Paragraph II.D.1.g, above.

h. Dec 15, 2016 – <u>See</u> Paragraph II.D.1.h, above.

i. Dec 16, 2016 – <u>See</u> Paragraph II.D.1.i, above.

j. Jan 6, 2017 – Attorney 2016(b) fee disclosure filed.

k. Jan 19, 2017 – <u>See</u> Paragraph II.D.1.k, above.

l. Feb 15 & 16, 2017 – <u>See</u> Paragraph II.D.1.l, above.

m. Feb 16, 2017 – <u>See</u> Paragraph II.D.1.m, above.

n. Feb 24, 2017 – <u>See</u> Paragraph II.D.1.n, above.

o. Mar 23, 2017 – Croslis failed to appear at the hearing and I took this matter under advisement.

9. <u>In re Eric Simmons</u>, No. 16-15572.

a. Aug 5, 2016 – case filed.

b. Aug 5, 2016 - Notice of deficient filing – missing certain required bankruptcy documents, including 2016(b) statement.

c. Aug 31, 2016 - Case dismissed for failure to file required documents.

d. Sep 14, 2016 – Croslis is ordered to show cause why all fees he collected in this case should not be disgorged, and he is ordered to appear at the hearing on Sep 22, 2016.

e. Sep 16, 2016 – Hearing rescheduled to October 27, 2016.

f. Sep 21, 2016 – <u>See</u> Paragraph II.D.1.f, above.

g. Nov 3, 2016 – <u>See</u> Paragraph II.D.1.g, above.

h. Dec 15, 2016 – <u>See</u> Paragraph II.D.1.h, above.

i. Dec 16, 2016 – <u>See</u> Paragraph II.D.1.i, above.

j. Jan 6, 2017 – Attorney 2016(b) fee disclosure filed.

k. Jan 19, 2017 – <u>See</u> Paragraph II.D.1.k, above.

l. Feb 15 & 16, 2017 – <u>See</u> Paragraph II.D.1.l, above.

m. Feb 16, 2017 – <u>See</u> Paragraph II.D.1.m, above.

n. Feb 24, 2017 – <u>See</u> Paragraph II.D.1.n, above.

o. Mar 23, 2017 – Croslis failed to appear at the hearing and I took this matter under advisement.

10. <u>Dolores L. Yenik</u>, No. 16-17118.

a. Oct 7, 2016 – Despite facing the difficulties that prevented him from properly handling the other cases and despite the various orders relating to his failure to handle the other cases properly, Croslis filed this Chapter 13 case.

b. Oct 7, 2016 – Despite facing the difficulties and orders relating to his improper handling of the prior cases, Croslis once again filed the bare minimum of bankruptcy documents necessary to open the case and received yet another notice of deficient filing – missing certain required bankruptcy documents, including 2016(b) statement.

c. Oct 19, 2016 – Order to show cause why this case should
not be dismissed and counsel sanctioned with Croslis being
ordered to appear at the hearing on December 15, 2016.

d. Dec 15, 2016 – <u>See</u> Paragraph II.D.1.h, above.

e. Dec 16, 2016 – An Order was entered vacating the prior
dismissal of the case and requiring Croslis to provide certain
specified information about his fees to the UST and to the
Court and to file all missing bankruptcy documents (the "Fee
Order"). This case had not been dismissed, so the part of the
order that vacated the dismissal was a nullity.

f. Jan 6, 2017 – Attorney 2016(b) fee disclosure filed.

g. Jan 13, 2017 – Croslis filed the missing required
bankruptcy documents.

h. Jan 19, 2017 – <u>See</u> Paragraph II.D.1.k, above.

i. Feb 15 & 16, 2017 – <u>See</u> Paragraph II.D.1.l, above.

j. Feb 16, 2017 – <u>See</u> Paragraph II.D.1.m, above.

k. Feb 24, 2017 – <u>See</u> Paragraph II.D.1.n, above.

l. Mar 23, 2017 – Croslis failed to appear at the hearing and I took this matter under advisement.

m. Mar 28, 2017 – Case dismissed with retention of jurisdiction to deal with Croslis' fees, sanctions/penalties, and contempt matters.

11. In re William F. Roberts, Jr., No. 16-17119.

a. Oct 7, 2016 – See Paragraph II.D.10.a, above.

b. Oct 7, 2016 - See Paragraph II.D.10.b, above.

c. Oct 19, 2016 – Order to show cause why that case should not be dismissed and counsel sanctioned with Croslis being ordered to appear at the hearing on December 15, 2016.

d. Dec 15, 2016 – See Paragraph II.D.1.h, above.

e. Dec 16, 2016 – An Order was entered requiring Croslis to provide certain specified information about his fees to the UST and to the Court and to file all missing bankruptcy documents (the "Fee Order").

f. Jan 6, 2017 – Attorney 2016(b) fee disclosure filed.

g. Jan 13, 2017 – Croslis failed to file the missing required
bankruptcy documents.

h. Jan 19, 2017 – <u>See</u> Paragraph II.D.1.k, above.

i. Feb 15 & 16, 2017 – <u>See</u> Paragraph II.D.1.l, above.

j. Feb 16, 2017 – <u>See</u> Paragraph II.D.1.m, above.

k. Feb 24, 2017 – <u>See</u> Paragraph II.D.1.n, above.

l. Mar 23, 2017 – Croslis failed to appear at the hearing and I
took this matter under advisement.

12. <u>In re Craig A. Bowes</u>, No. 16-17586.

   a. Oct 28, 2016 – <u>See</u> Paragraph II.D.10.a, above.

   b. Oct 28, 2016 - <u>See</u> Paragraph II.D.10.b, above.

   c. Nov 17, 2016 – Croslis failed to file the missing required
   bankruptcy documents and the case was dismissed.

   d. Feb 24, 2017 – <u>See</u> Paragraph II.D.1.n, above.

   e. Mar 23, 2017 – Once again, Croslis failed to appear at the
   hearing and I took this matter under advisement.

13. <u>In re Randall Coine</u>, No. 16-17887.

a. Nov 10, 2016 – <u>See</u> Paragraph II.D.10.a, above.

b. Nov 10, 2016 - <u>See</u> Paragraph II.D.10.b, above.

c. Dec 2, 2016 – Croslis failed to file the missing required

bankruptcy documents and the case was dismissed.

 d. Feb 24, 2017 – <u>See</u> Paragraph II.D.1.n, above.

e. Mar 23, 2017 – Croslis failed to appear at the hearing and I

took this matter under advisement.

# III.  <u>DISCUSSION</u>

Once again, I note that this Memorandum Opinion draws heavily on the February 24, 2017 motion filed by the UST. Although many of the following legal statements are axiomatic in bankruptcy law, the UST does a noteworthy job detailing each issue and providing substantial support for his position. I will adopt much of his discussion, having ascertained that it is correct and appropriate in the circumstances of these cases.

The amounts that each client was charged by Croslis, according to the fee disclosure statements pursuant to Rule 2016(b) that he finally filed follow:

<u>In re George (I)</u> – Unknown – 2016(b) statement not filed

<u>In re George (II)</u> – Unknown – 2016(b) statement not filed

<u>In re Smith</u> – $3,500 – Fee was $3,500, Smith paid $1,750, balance due was waived

<u>In re Rusyn</u> – $3,500

<u>In re Alvarado</u> – $3,500

<u>In re Pena</u> - $3,500

<u>In re Amaro</u> – $5,500 – Fee was $5,500, Amaro paid $5,000, balance of $500 remained to be paid

<u>In re Gonzalez</u> – $3,500 – Fee was $3,500, Gonzalez paid $3,150, balance of $350 remained to be paid

<u>In re Coine (I)</u> – $3,500 - Fee was $3,500, Coine paid $3,150, balance of $350 remained to be paid

In re Cushing – $3,500 – Fee was $3,500, payment check
bounced, $3,500 remained to be paid

In re Rizzo – $3,500

In re Simmons – 5,000

In re Yenik – $3,500 – Fee was $3,500, Yenik paid $3,250,
balance of $250 remained to be paid

In re Roberts – $3,500

In re Bowes – Unknown – 2016(b) fee statement not filed

In re Coine (II) - Unknown – 2016(b) fee statement not filed

In re Kelvis – Unknown – 2016(b) fee statement not filed

Croslis failed to file all of the required bankruptcy documents in
every case he filed. He filed more documents for Ms. Yenik than in any other
case for his other clients, but even there his filings remained incomplete. As far
as I have been able to discern from the records, Croslis failed to disgorge and
reimburse any fees to any of his former clients other than to Ms. Pena. Croslis
testified that his custom was to charge a single fee to his clients, which fee was
intended to cover both (1) his efforts to have his clients' lenders modify their
mortgages and (2) his filing bankruptcy for them. Bankruptcy was regarded as
anticipated and necessary as a negotiating tactic solely to allow his clients to
freeze pending foreclosure sales to force negotiations about mortgage
modifications. Croslis' actions and, as importantly, his inactions violated his
obligations under the Bankruptcy Code, the Bankruptcy Rules, a Federal Trade

33

Commission rule at 12 C.F.R. §1015.5, the Pennsylvania Rules of Professional

Conduct, and general concepts of professionalism. I will examine what Croslis

did and did not do relating to his varied obligations to his clients and to the Court.

# A.    **Failure To Disclose Fees**

"[T]he basis or rate of the fee shall be communicated to the client, in

writing, before or within a reasonable time after commencing the

representation."[13] This is not an aspiration; it is a requirement of the Pennsylvania

Rules of Professional Conduct. But Croslis provided no written descriptions of

his fees to his clients. Furthermore, if any part of the legal fee was not earned,

Croslis was obliged to return it to his clients.[14] I received nothing from Croslis

that might educate me about how much of his fees, if any, was earned and how

much should have been reimbursed under the Pennsylvania Rules of Professional

Conduct or its Ethical Considerations.

The Bankruptcy Code and Rules also weigh heavily on the issue of

professional fees. The UST has identified numerous legal bases for sanctioning

Croslis and ordering him to disgorge all fees he received from his clients/debtors.

---

[13]      Pa. R. Prof. Cond., Rule 1.5(b).
[14]      Pa. R. Prof. Cond., Rule 1.5, Explanatory Comment [2]. The Federal Trade Commission takes
this disciplinary rule one farther. If the fee is for counsel to get a modification of a client's mortgage,
the lawyer has not earned, and may not take, the fee until the mortgage is successfully modified. See
text, infra, at pp. 49-51.

The UST arguments comport completely with my understanding of the

requirements for bankruptcy counsel to describe their fees and fee agreements

with their clients. I will therefore draw heavily from the arguments of UST,

which I find and conclude accurately describe the law relating to fees and

disgorgement.

Section 329 of the Bankruptcy Code establishes certain clear

mandates for counsel representing debtors in bankruptcy:

> (a)  Any attorney representing a debtor in a case under [the
> Bankruptcy Code], or in connection with such a case, whether or
> not such attorney applies for compensation under this title, shall
> file with the court a statement of the compensation paid or agreed
> to be paid . . . for services rendered or to be rendered in
> contemplation of or in connection with the case by such attorney,
> and the source of such compensation.

11 U.S.C. §329(a). Similarly, an associated Bankruptcy Rule states:

> (b)  Every attorney for a debtor, whether or not the attorney applies
> for compensation, shall file and transmit to the United States
> trustee within 14 days after the [petition date] . . . the statement
> required by §329 of the Code . . .. A supplemental statement shall
> be filed and transmitted to the United States trustee within 14
> days after any payment or agreement not previously disclosed.

Fed. R. Bankr. Proc., Rule 2016(b).

The common and ordinary effect of Section 329 and Rule 2016(b) is

for Chapter 13 debtors' counsel to file a 2016(b) fee disclosure shortly after filing

35

a client's bankruptcy. The fee disclosure explains counsel's anticipated services on behalf of his client and how much counsel has been or will be paid to perform those services. Later, upon confirmation of a Chapter 13 plan (if the case was successful) or just before dismissal of the case (if it was not), counsel shall file a revised fee disclosure describing what services they actually performed and what fee is owed for those services. Either the original or the later fee disclosure is included as an exhibit to counsel's application for approval of counsel's fee. Counsel shall disclose fees paid for work done before the initial petition in the case was filed, during the case, and at the conclusion of counsel's services. To be paid for later work in the case obligates counsel to file supplemental fee disclosures and applications for payment.

Lest there be any misunderstanding, the Code and Rules provisions relating to counsel fees are neither permissive nor optional nor suggested. They are mandatory. BankPhiladelphia v. Hamburg, Rubin, Mullin, Maxwell & Lupin, (In re Larrieu), No. Civ. A. 99-3875, 2000 WL 36328 at *3 (E.D. Pa. Jan. 18, 2000)(debtors' law firm had a duty to disclose all matters relating to fees owed to it by its clients). Accord In re Jensen, No. 04-34567ELF, 2008 WL 2405023, at *4 (Bankr. E.D. Pa. June 13, 2008). Croslis had an affirmative, mandatory duty to disclose all fees and fee agreements relating to each of his clients. In re Berg, 356

36

B.R. 378, 381 (Bankr. E.D. Pa. 2006); In re Maui 14K, Ltd., 133 B.R. 657, 660

(Bankr. D. Haw. 1991); In re Saturley, 131 R.R. 509, 517 (Bankr. D. Me. 1991).

Throughout pages 8 and 9 of the UST Motion, the UST refers to a

plethora of decisions that support a strict approach, condemning Croslis' failure

to provide the fee disclosures on a timely basis. I adopt the UST argument as

legitimate under the Bankruptcy Code and the Bankruptcy Rules, as supported by

numerous other courts, and as correctly describing the negative consequences of

Croslis' missing or unreasonably late filed fee disclosures.

I agree with the UST that Croslis has breached his statutory duty

relating to fees. He brought it on himself by failing to timely file the required

Rule 2016(b) statements in any of the cases included in this matter. Only after

repeated admonitions and orders did he finally file fee disclosure statements on

January 6, 2017. Even those statements leave material questions unresolved. Both

the UST and I intended to question Croslis at the scheduled hearings,[15] but he

---

[15]    Questions that I would have asked, without knowing what the UST might have asked, include,
inter alia: (1) From 2013 to date, how many clients other than those addressed in this Memorandum
Opinion did Croslis represent for mortgage modification; (2) what legal services were intended to be
performed for each dollar charged for each client; (3) what allocation of the fee was intended between
the mortgage modification work and the bankruptcy work; (4) how was that allocation determined; (5)
for any of his clients who did not need to file bankruptcy, did he reimburse the "bankruptcy" part of the
fee; (6) for any of his clients who did not obtain a successful mortgage modification, did he reimburse
the "mortgage modification" part of the fee; (7) what did Croslis do with the fees he received – did he
take them immediately as a fee or did he hold them in an escrow account; (8) what would have
happened to the bankruptcy fee if the case were resolved early in Croslis' representation, perhaps
immediately upon making a request to modify the mortgage, before any time was expended for
bankruptcy mattes; and (9) what hourly rate did Croslis use to calculate his fees in bankruptcy (a fixed
fee is allowed in bankruptcy only if confirmation of a Chapter 13 plan is achieved). See L.B.R. 2016-

chose not to attend. In particular, he failed to appear at the last scheduled, most

serious, hearing on March 23, 2017. All matters that might be in some doubt, all

issues that might be closely balanced between in his favor or against him, and all

vagaries of the information that Croslis provided will be construed adversely to

him now because he did not appear at these hearings.[16]

I agree with the UST that Croslis' errant behavior in failing to file

his fee information and his refusal to attend the hearings at which the UST

appeared to examine Croslis is worthy of disgorgement of all fees he received in

all cases described from 2013 to date in this Memorandum Opinion. Similarly, in

the immediately succeeding section, I will review the fees he charged to

determine if they were unreasonable, leading to further support for disgorgement.

His cavalier attitude toward attending or not attending hearings will be further

addressed below. As will also be discussed, Croslis' behavior opens him to

findings of contempt and sanctions in form of monetary civil fines in addition to

disgorgement of fees.

---

2(a)(1)(A) & (a)(1)(B). Furthermore, I anticipate that Croslis' answers to these questions and to any
questions from the UST would have led to more questions that I would have asked.
[16]    See pp. 59-60, infra, about adverse inferences arising from conduct similar to Croslis' refusal to
appear.

# **B.**    **Unreasonable Fees**

Croslis acted improperly by failing to file his 2016(b) fee statements.

He also violated his duties under the Bankruptcy Code and Rules by preventing

the UST and this Court from being able to analyze the reasonableness of the fees

he charged. Section 329(b) of the Bankruptcy Code and Bankruptcy Rule 2017

mandate that all fees shall be reasonable and allow the Court and others to

evaluate whether a fee charged by counsel complies with the reasonableness

mandate.

> On motion by any party in interest or on the court's own initiative,
> the court, after notice and a hearing may determine whether any
> payment of money . . . by the debtor, made directly or indirectly
> and in contemplation of the filing of the petition under the Code by
> or against the debtor . . . to an attorney for services rendered or to be
> rendered is excessive.

Bankruptcy Rule 2017(a). Furthermore a court may "order the return of any such

payment, to the extent excessive, to . . . the entity that made such payment [such

as the debtors]." Section 329(b) of the Bankruptcy Code. The burden of proof in

any investigation of the reasonableness of fees is clearly on the attorney. Cohn v.

U.S. Trustee (In re Ostas), 158 B.R. 312, 323 (N.D.N.Y. 1993); In re Haney, 284

B.R. 841, 851 (Bankr. N.D. Ohio 2002); In re Mondie Forge Co., 154 B.R. 232,

237 (Bankr. N.D. Ohio 1993).

Reasonableness of fees is determined by the quality of service as
much as by how much time was expended in a task. Services of little or no value
to the debtor yield little or no support for counsel's fees. In re Javier Estrada,
Inc., No. 09-50324, 2010 WL 958024 (Bankr. S.D. Tex. 2010); In re Vargas, 257
B.R. 157, 166-67 (Bankr. D.N.J. 2001). I agree with the UST that, to the extent
that Croslis provided any services to his clients, they were wholly unsuccessful
and of no value. I find this because none of his clients advanced beyond the very
preliminary stages of bankruptcy toward a confirmed plan or a bankruptcy
discharge. In fact none of his clients were remotely close to success in their
bankruptcies.

I know only that the Thirteen Cases and the first two cases, In re
George, were either dismissed, had a dismissal order vacated, or were saved from
dismissal solely to allow this examination of Croslis to proceed. Croslis said that
three of his clients, Henry Smith, III, Randall Coine,[17] and Salvatore Rizzo, were
successful in modifying the terms of their mortgages and therefore might have
decided that their bankruptcies were unnecessary. But I cannot know that without
evidence. The only information I have on whether Croslis was able to obtain

---

[17]    Although the Coine mortgage may have been modified, that was apparently not enough. Coine
Case No. 16-15569 was dismissed. Croslis filed a filed a second case on behalf of Coine, No. 16-17887,
and the second case was also dismissed for failure to file the required bankruptcy documents. Upon this
circumstance, I cannot determine that any of Croslis' clients were successful in having their mortgages
modified satisfactorily.

mortgage relief through some modification for any of his clients is in the Status

Report. The Status Report, however, is unsworn, is dated contradictorily,[18] and is

missing a great deal of information that could have been augmented and

expanded upon by Croslis' testimony at the March 23 hearing. But Croslis was

not there. He presented no evidence of any benefits to his clients arising out of

his services. The record has no credible evidence that any of his clients received a

financial benefit from anything Croslis did, whether through their bankruptcy

filings or through a mortgage modification.

       The UST points out that, not only did Croslis initially fail to file the

required bankruptcy documents on behalf of his clients, he ignored the Orders

that I issued noting the deficiencies and missing documents in his original filings

and ordering him to file them. Croslis had no intention to assist his clients to

complete their bankruptcy cases. Filing bankruptcy was merely a negotiation

tactic of indeterminate value. To the extent that filing the bankruptcies helped his

clients, Croslis could have and should have testified to tell me so; but he did not.

Croslis failed to support the value of his fees by not attending the hearings.

Disgorgement of Croslis' fees is proper and appropriate because he failed or

---

[18]    The Status Report was due to have been provided in early January 2017. But the two Status
Reports Croslis eventually provided are dated January 18 and February 15, 2017, and were delivered to
the UST and the Court on February 15 and 16, 2017, respectively.

refused to explain the benefits he provided to his clients for the fees they paid to him.

Disgorgement is also proper and appropriate when the lawyer utterly abandons his clients after filing only the bare necessity of documents, and then provides no further services in the bankruptcy. Hale v. U.S. Trustee, 509 F.3d 1139 (9th Cir. 2007). Disgorgement of Croslis' entire fee is warranted because the services he provided were de minimis and produced no value for debtors. In re Geraci, 138 F.3d 314 (7th Cir. 1998). Again, Croslis could have and should have testified at the March 23 hearing about any value his clients had received from the aborted filings. He refused to do so; his fees shall be disgorged.

## C.    Breach of Duties

The UST suggests that Croslis violated his obligation to perform a reasonable investigation into the circumstances of each of his clients' financial difficulties. The investigation would have led his clients to file bankruptcy only if it provided them a quantifiable benefit. But Section 707(b)(4)(C) of the Bankruptcy Code, on which the UST depends, is applicable only to Chapter 7 cases.[19] The UST is correct in the substance of his analysis, but his argument

---

[19]    I conducted independent research for the entire Memorandum Opinion and found no support for Section 707 imposing an independent duty on Chapter 13 counsel. My research could not be said to have been exhaustive, but it was sufficient for me to conclude that Section 707(b) applies only to

Case 16-17586-ref    Doc 11    Filed 05/24/17    Entered 05/24/17 10:45:45    Desc Main
Document    Page 43 of 64

must be based on alternative sources: Bankruptcy Code Sections 105(a) &

1307(c)[20] and Bankruptcy Rule 9011. The following discussion lacks any input

that Croslis might have provided about his thoughts and strategies to explain

what he was doing to help his clients on a case-by-case basis. Croslis forfeited

that ability to explain himself by failing to attend the March 23 hearing.

   The court in <u>Dignity Health v. Seare</u> (<u>In re Seare</u>), 493 B.R. 158,

209 (Bankr. D. Nev. 2013), aff'd 515 B.R. 599 (9th Cir. BAP 2014), correctly

likened the requirement of reasonable investigation to the duties of counsel under

Bankruptcy Rule 9011. Rule 9011, of course, applies to all bankruptcies under all

chapters of the Bankruptcy Code. Rule 9011 provides that an attorney who signs

bankruptcy documents certifies that to the best of that attorney's knowledge,

information, and belief, the writing is proper and necessary for the party after

reasonable inquiry. Bankruptcy Rule 9011(a).

---

Chapter 7 cases and is limited to what it says: The court "may dismiss a case filed . . . under this chapter [Chapter 7] . . .."

[20]    I understand full well that Section 1307(c) refers by its terms to actions by debtors. Section 1307(c), however, lays out a series of indicia of cause justifying dismissal of a case, including (as will be shown) bad faith. In the cases before me, I find and conclude that the above debtors themselves are wholly innocent of any wrongdoing or bad faith. The scheme thought out and directed by Croslis goes beyond the spur of the moment litigation tactic used by counsel in the Chapter 13 case of <u>In re Myers</u>,. 491 F.3d 120, 125 (3d Cir. 2007), discussed <u>infra</u> at p. 43. Instead, the use of bankruptcy in the cases before me was purely and solely a negotiation tactic anticipated to be used in all of his cases and was actually used in the above captioned cases (other than <u>Crohel</u>). Despite Section 1307(c) applying by its terms to debtors, therefore, I regard it as equally relevant and applicable to counsel who advise and carry out actions that violate it.

Section 1307(c) of the Bankruptcy Code contains numerous events

that warrant a Bankruptcy Judge's dismissal of a case. 11 U.S.C. §1307(c). I may

dismiss a Chapter 13 case for cause, including, among others: Unreasonable

delay, §1307(c)(1) and failure to timely file a plan, §1307(c)(3). Before I

examine either of the itemized examples of "cause" in Section 1307(c), however,

I note that the examples are merely that  −  examples. They are not an exclusive

list.

Counsel should not, may not, and cannot file a bankruptcy for a

client on a kneejerk basis. Counsel must be able to articulate the sound reasons

that led to the decision to file a bankruptcy. Delaying state court litigation is

woefully insufficient to support the filing of bankruptcy in good faith without an

accompanying purpose of reorganization or a "fresh start" for the client. The

UST refers me to In re Myers, 491 F.3d 120, 125 (3d Cir. 2007), to support his

position. More specifically, the filing of a bankruptcy solely to frustrate a

foreclosure sale is some evidence of bad faith, but may be, standing alone, the

only evidence needed to establish bad faith. Myers, 491 F.3d at 125.

The Third Circuit Court goes on to explain how and why the "cause"

requirement in Section 1307 includes a good faith component. Id. The Court

concludes in Myers that, although Section 1307(c) does not expressly identify

bad faith as something that might lead to dismissal, bad faith is included within

the elements set forth in Section 1307(c). <u>Myers</u>, 491 F.3d at 125-26, <u>citing</u> In <u>In</u>

<u>re Lilley</u>, 91 F.3d 491, 496 (3d Cir. 1996). In <u>Lilley</u> the Third Circuit Court

recognized that it faced a matter of first impression in whether Chapter 13

contains a good faith requirement. 91 F.3d at 496. The <u>Lilley</u> Court ruled that

Chapter 13 does require a good faith component that must be determined on a

case by case basis, by analyzing all of the relevant facts.

Croslis evidenced his bad faith in these cases by the following

repeated actions and inactions. Croslis: (1) Appears to have filed each case on the

eve of a foreclosure sale; (2) filed only the minimum documents necessary to

commence each case; (3) stated that the sole reason for the filings was to stop

state court foreclosures; (4) made misrepresentations in some of his clients'

filings; (5) ignored the initial orders that explained to him that if he failed to

provide the missing documents, his clients' cases would be dismissed; (6)

ignored the demands of the UST and my orders to provide information that could

have advanced his clients' cases if he had done anything for them; (7) filed his

very late 2016(b) fee statements only after I specifically ordered him to file them;

and (8) perhaps most importantly, failed to obey and take advantage of my order

requiring him to appear in court to explain each transaction with his clients, his

purpose for filing each case, and his intentions to administer each case from its

start through to completion.

The above cumulative facts establish Croslis' bad faith.

The <u>Myers</u> Court declared its agreement with the Bankruptcy Court
that using bankruptcy as a mere tactic to delay state court litigation constituted
bad faith in and of itself. 491 F.3d at 126. The use of filing bankruptcies to deal
with multiple state litigation and sheriffs' sales is far stronger and much more
blatant in the cases before me than in <u>Myers</u>. This is not a single instance of
stopping a state court proceeding, but is an intentional pattern of doing so. The
Thirteen Cases, the two <u>George</u> cases, and <u>Kelvis</u> stand starkly before me -
classic examples of filing bankruptcy after bankruptcy after bankruptcy solely to
delay state court proceedings. Croslis further exemplified his tactical use of
bankruptcy and his failure to reasonably investigate his clients' circumstances by
filing <u>In re Bowes</u>, the second <u>In re Coine</u>, and <u>In re Kelvis</u>, after I had issued the
orders requiring information in the preceding cases. This overall behavior will
also be the subject of further review when I discuss contempt and sanctions
below.

Authority beyond Section 1307(c) exists elsewhere in the
Bankruptcy Code. Section 105 gives courts inherent equitable power to enforce
any provision of the Bankruptcy Code and to prevent an abuse of the bankruptcy
process. This includes the ability to impose sanctions for counsel's abuse of the
bankruptcy process. <u>Walton v. LaBarge</u> (<u>In re Clark</u>), 223 F.3d 859, 864 (8th Cir.

2000). The power I have under Section 105 coupled with the dictates of Section

1307(c) permit me to sanction Croslis for his violations described above and I

will do so.[21]

# D.      Failure To Fulfill His Obligations as a Debt Relief Agency

An attorney who provides bankruptcy assistance to a debtor is a debt

relief agency, as defined in Bankruptcy Code Section 101(12A). Section

526(a)(2) and (3); Milavetz, Gallop & Milavetz, P.A. v. United States, 559 U.S.

229, 230-31 (2010). Croslis is a debt relief agency because he provided

bankruptcy assistance to the debtors in exchange for the payment of money

relating to a bankruptcy case. Section 101(4A). Croslis is therefore subject to the

provisions of Section 526. Croslis filed the cases for his clients without regard to

the safeguards and requirements required of debtor's counsel. He filed some of

their cases without the required credit counseling.[22] Despite this statutory

shortfall, Croslis prepared, and he and his clients appear to have signed,[23] the

---

[21]      The UST included a number of additional decisions that allow me to impose sanctions against counsel for abuses such as those perpetrated by Croslis. See Jones v. Bank of Santa Fe (In re Courtesy Inns. Ltd., Inc.), 40 F.3d 1084, 1089-90 (10th Cir. 1994); and Cal. Fed. Bank, FSB v. Douglas (In re Douglas), 141 B.R. 252, 256 (Bankr. N.D. Ga. 1992). Again, I have no countervailing testimony or argument from Croslis because he failed or refused to appear at the March 23 hearing to oppose the UST Motion.

[22]      11 U.S.C. Section 109(h); In re DiPinto, 336 B.R. 693 (Bankr. E.D. Pa. 2006)(the requirement of credit counseling is part of the fundamental eligibility to be a debtor).
[23]      I say, "clients appear to have signed," because at least one of Croslis' clients, Ms. Marguerite Rusyn, testified that she did not see and did not sign the papers that were filed. See text at p. 48, infra.

initial petitions for <u>Amaro, Cushing, Yenik, Roberts, Bowes</u>, and <u>Kelvis</u> without
having his clients obtain credit counseling. Yet, Croslis inserted into the initial
petition the misrepresentation that those five debtors had in fact obtained credit
counseling. This constitutes an outright falsehood perpetrated by Croslis.

Croslis denied the UST and me the opportunity to question him in
the March 23 hearing. I am left, therefore, with conjecture, although it is based on
the information in the record. But Croslis' failure to appear opens the door for
adverse inferences of what he did or do not do and what he did or did not tell his
clients.[24] At the November 3, 2016 hearing, Ms. Marguerite Rusyn appeared and
testified without contradiction by Croslis (who was present at that hearing).
Croslis was specifically offered the opportunity to question her but he chose not
to do so. She had not seen the petition that Croslis filed on her behalf; she had not
signed any documents relating to her bankruptcy; she had not authorized Croslis
to file bankruptcy for her; she tried to speak with Croslis about her bankruptcy,
but he would not return her calls; she paid Croslis $3,000; and she owed (as of
the date of the hearing) her replacement counsel additional fees for his
representation of her in trying to get her case back on track. With no cross-
examination by Croslis, I accept Ms. Rusyn's testimony as entirely credible and
accurate. I have no information that Croslis did or did not advise any of his

---

[24]    <u>See</u> text at pp. 59-60, <u>infra</u>.

clients about the risks that might result from the filing and prompt dismissal of

their cases pursuant to Sections 362(c)(3) and 362(c)(4). As an adverse inference,

therefore, I find what he did and did not do in the <u>Rusyn</u> case, he did or did not

do in all cases. Croslis did not explain the risks of bankruptcy to any of his

clients.

But more than that is Ms. Rusyn's testimony that he filed her

bankruptcy papers without her knowledge. Incredibly, she did not know she was

becoming a debtor in bankruptcy. Again, Croslis misrepresented to the Court

through the initial bankruptcy documents that his client was aware of what he

was doing on her behalf – but she was not. As another adverse inference,

therefore, I find that Croslis did not have his other clients' permission to file their

bankruptcy cases and he did it unilaterally.

Croslis was obliged by Section 526 to advise his clients about, first,

the ramifications that might arise from their filing bankruptcy and, second, that

he was filing bankruptcy on their behalf. Counsel who violates Section 526 in a

clear and consistent pattern or practice, as Croslis did, is subject to civil remedies.

<u>See</u> Section 526(c)(5). Croslis' approach to his bankruptcy clients and their

absence of knowledge or notice of what he was doing to and for them by filing

their bankruptcies is well within the ambit of a clear and consistent practice that

violates Section 526. I will enjoin Croslis from further violating Section 526 and

I will impose an appropriate civil remedy against him.

# E.    Mortgage Assistance Relief Services

A recent bankruptcy case out of Texas raises another issue for me to

consider. The court in <u>Anderson v. Saxton</u> (<u>In re Anderson</u>), Case No. 15-33603,

Adv. No. 15-3290, 2017 WL 1066563 (Bankr. S.D. Tex., Mar. 17, 2017), was

faced with extensive litigation by a debtor against his attorney and law firm

which manifested many of Croslis' same actions and inactions.[25]

The law firm in the case attempted to operate between being a debt

relief agency and a mortgage relief agency under a recent Federal Trade

Commission rule, 12 C.F.R. §1015.5. It was unable to do so and the law firm, the

lawyer, and the law firm's managing attorney were sanctioned and obliged to pay

the attorneys' fees incurred in litigation against them as brought by their former

client. In 2011, the Federal Trade Commission issued the rule at Section 1015.5,

that a firm may not collect a fee for providing mortgage assistance until it has

successfully obtained mortgage relief on behalf of a client. <u>Id</u>. at *5.

---

[25]    As with my analysis of 28 U.S.C. §1927, below, and the powers it bestows on Bankruptcy
Courts, I have no compunctions about raising a new legal issue against Croslis in this Memorandum
Opinion. This is so because he failed and refused to appear at the March 23 hearing and filed no
response whatsoever to the UST Motion, which was filed on April 24, 2017. Section 1927 and Section
1015.5 join Sections 105(a) and 1307, all of which address the same factual issues that are raised in the
UST Motion.

An exception to the broad FTC rule is that a law firm may collect fee advances under certain circumstances. The law firm in <u>Anderson</u> attempted to extend the law firm umbrella to mortgage relief work to be able to retain all fees even if it produced no results for its clients. <u>Id.</u> By so doing, the law firm hoped to escape the advance payment prohibition for mortgage relief services while at the same time avoiding the obligations of an attorney as a debt relief agency. <u>Id.</u>

The <u>Anderson</u> court found that the law firm was a debt relief agency, and sanctioned the firm the full amount of its fee, the out of pocket expenses of debtor in litigating the matter, and substantial attorneys' fees for debtor's new counsel. <u>Id.</u> at *8-9. Again, the scheme perpetrated by the law firm and lawyers in <u>Anderson</u> is quite similar to Croslis' actions and inactions. I will require the payment of damages by Croslis for the only known out of pocket damages: Ms. Rusyn travelled to the Court from the Lehigh Valley for the November 3, 2016 hearing. I will order Croslis to pay Ms. Rusyn for mileage and parking in the amount of $60.

I also add this analysis of the FTC rule because I do not know what Croslis did with the fees he received from his clients. His disposition of the fees was a topic the UST and I wanted to address in the hearing that he failed to attend. If he took the payments as fees, he may have violated the FTC regulation

at 12 C.F.R. §1015.5. Again, I need Croslis' disclosure of how much he got from

his clients, when he got it, and what he did with it.

# F.   Sanctions Against Croslis

Throughout this Memorandum Opinion, I have recounted specific

bankruptcy and other laws and rules that Croslis violated. I have also identified

misrepresentations that Croslis imposed on the Court relating to client

counseling. The context of the December 16, 2016 orders was the statement from

the UST that Croslis had promised to provide the missing documents to him in

the evening of December 14, but failed to do so. Croslis was in court for this

exchange and promised on the record on December 15, that he would file the

documents the next day, December 16, 2016. Despite Croslis' optimism in being

able to file the extensive documents the next day and because the Christmas

holiday was fast approaching, I ordered on December 16, 2016, that Croslis file

all missing documents on or before January 6, 2017. Although Croslis assured me

that he would file the missing required documents, he failed to do so.

On January 6, 2017, Croslis filed only his bare-bones 2016(b) fee

statements in the Thirteen Cases.

Five weeks later, on February 15 and 16, 2017, Croslis delivered to

the UST and me a five-page Status Report, my copy of which was inexplicably

dated January 18, 2017. Other than the dates, the Status Reports are identical.
The Status Report provided only a portion of the information required by my
December 16 Orders. Missing from the Status Report was the following
information -- when did each client retain him to represent the client, what
services were to be provided to each client, what was the date on which each case
was filed, what was the reason each case was filed, on what dates did he receive
any compensation for his overall representation of each client, why did he
abandon all of his clients in their bankruptcy cases, and what were the prospects
when filed for successfully completing the bankruptcy for each client.

Upon my consideration of the argument of the UST in this matter,
coupled with the lack of respect for this Court and his clients shown by Croslis as
well as his absence of professionalism, all of which were driven home by his
failure to file the required documents as he promised (and I ordered) and his
failure to attend both the March 23 and April 27, 2017 hearings. I find and
conclude that the UST is correct that the circumstances are far beyond the realm
of my tolerance. Croslis ignored and therefore obstructed my attempts to find out
what happened to his clients' cases. At first, I had set out to learn what was going
on and not to sanction an attorney, but Croslis made my attempt to uncover what
happened to his clients terribly difficult, if not impossible.

Any number of provisions of the Bankruptcy Code and Rules and

other federal legislation, provide recourse in dealing with a recalcitrant,

disrespectful, misrepresenting attorney such as Croslis. Section 105(a) enables

me to issue any order necessary or appropriate to carry out the provisions of the

Bankruptcy Code and to make any determination necessary or appropriate to

enforce my Orders and the Bankruptcy Rules. Jones v. Bank of Santa Fe (In re

Courtesy Inns, 40 F.3d 1084, 1089 10th Cir. 1994).

### 1.  Inherent power and authority to issue sanctions

The United States Supreme Court has long recognized the inherent

power of federal courts to "assess attorney's fees when a party has 'acted in bad

faith, vexatiously, wantonly, or for oppressive reasons.'" Chambers v. Nasco,

Inc., 501 U.S. 32, 45-46 (1991)(quoting Alyeska Pipeline Service Co. v.

Wilderness Society, 421 U.S.  240, 258-59 (1975)). Bankruptcy Courts have the

inherent authority and power to regulate the practice of attorneys who appear

before them. In re Nguyen, 447 B.R. 268, 280 (B.A.P. 9th Cir. 2011) citing

Chambers v. NASCO, Inc., 501 U.S. 32, 43-45 (1991). Accord In re Parker, Civil

Action No. 3:14cv241, 2014 WL 4809844, at *5 (E.D. Va. Sept. 26, 2014). This

inherent authority and power include the power to suspend or disbar attorneys

from practicing before the court. Williams v. Lynch (In re Lewis), No. 14-1881,

2015 WL 3561277, at *2 (4th Cir. June 9, 2015). Croslis' actions and inactions on

behalf of his clients amount to bad faith and vexatious and wanton conduct,

which authorizes me to issue sanctions against him. I will do so.

## 2. <u>Power and authority to issue sanctions pursuant to Section 105(a)</u>

Section 105(a) of the Bankruptcy Code, 11 U.S.C. §105(a), provides

bankruptcy judges with broad power to implement the provisions of the

Bankruptcy Code and to prevent abuse of the bankruptcy process. <u>In re Volpert</u>,

110 F.3d 494, 500 (7th Cir.1997); <u>In re Coquico, Inc.</u>, 508 B.R. 929, 940 (Bankr.

E.D. Pa. 2014). Under Section 105(a), I "may issue any order, process, or

judgment that is necessary or appropriate to carry out the provisions" of Title 11.

Section 105(a) also permits me, sua sponte, to "tak[e] any action or mak[e] any

determination necessary or appropriate to enforce or implement court orders or

rules, or to prevent an abuse of process." 11 U.S.C. §105(a).

In these cases, Croslis has intentionally filed over a dozen

incomplete cases without intending to supplement the filing with the required

documents. He has also misrepresented certain key facts to the Court. Section

105(a) may be used "'to protect the integrity of the Bankruptcy Code as well as

the judicial process,'" <u>Brown v. Mitchell</u> (<u>In re Arkansas Communities, Inc.</u>), 827

F.2d 1219, 1222 (8th Cir.1987) (<u>quoting</u> <u>In re Silver</u>, 46 B.R. 772, 774 (D.

Colo.1985)). Finally (in no way exhausting an enumeration of its powers),

Section 105(a) enables me to maintain control of the courtroom and the administration of the dockets and cases before me. Volpert, 110 F.3d at 501.

Because sufficient evidence, as described above, exists for me to find abuses of the bankruptcy judicial system by Croslis, I may award sanctions against him under Section 105(a), without regard to the signed document requirement of Rule 9011.[26] In re Antonelli, No. 11-20255/JHW, 2012 WL 280722, at *13 (Bankr. D.N.J. Jan. 30, 2012); In re Bailey, 321 B.R. 169, 178 (Bankr. E.D. Pa. 2005); In re Collins, 250 B.R. 645, 657–59 (Bankr. N.D. Ill. 2000); In re Mergenthaler, 144 B.R. 632, 635 (Bankr. E.D.N.Y.1992) (citing United States v. International Brotherhood of Teamsters, 948 F.2d 1338, 1345 (2d Cir.1991)). An explicit finding of bad faith or of willful misconduct, is required to award sanctions. Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc., 57 F.3d 1215, 1225 (3d Cir. 1995); Bailey, 321 B.R. at 178. See also Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1196 (9th Cir. 2003).

In the cases before me, I face bad faith and willful misconduct. I find and conclude that Croslis knew he was using the Bankruptcy Code as nothing more than an improper brake on state court proceedings. He slammed it on numerous times in the cases before me and all state court litigation and sheriff's

---

[26]    The signed document requirement of Rule 9011is also satisfied because Croslis signed each of the bankruptcy petitions for his clients. I invoke my powers to sanction Croslis without seeking to satisfy the procedural requirements of Rule 9011 or utilize its powers.

sales were stayed. Croslis' behavior interfered with the bankruptcy process by
intentionally filing and then abandoning the cases he filed, imposing on the
Chapter 13 Trustee, the UST, and this Court additional administrative burdens.
Croslis knew he never intended to complete the bankruptcy filings of his
clients/debtors and he intended to unconditionally abandon them. His clients
faced issues that might come back to haunt them in the future if they really need
or intend to file and complete a bankruptcy case.[27] Croslis relied on the
compliance of his clients, who did not raise a fuss despite the utter waste of their
filing fees and fees paid to Croslis for what he did not do in their bankruptcies.
His clients acted in good faith, even when Croslis abandoned them. I make these
findings based upon my prior statement that Croslis' failure to testify allows me
to make negative inferences from the facts.

I am also faced with the misrepresentations that Croslis made by (1)
filing the bankruptcies without his clients' knowledge or consent and (2)
misrepresenting the status of credit counseling for at least five of his clients.

Croslis undertook this course of action knowing that prior to filing
for bankruptcy relief, his clients were already had issues with their mortgages. He
added to their burdens the obligations of Chapter 13 debtors. His clients were

---

[27]    *Croslis' clients faced potential problems in subsequent bankruptcies pursuant to Bankruptcy
Code Sections 362(c)(3) & 362(c)(4).*

obliged to make monthly payments to the Chapter 13 Trustee in addition to

keeping current the full amount of their mortgage payments. His abandonment of

his clients and their succeeding difficulties show that Croslis' conduct was

egregious and reprehensible. I conclude that what Croslis did constitutes

compelling grounds for sanctions. It is appropriate, valid, and necessary for me,

therefore, to award sanctions against Croslis under Section 105(a).

### 3. <u>Sanctions are warranted against Croslis under 28 U.S.C. §1927</u>

The UST stopped his analysis of sanctioning Croslis with Section

105(a) and the Court's inherent power. I am not limited, however, to analyzing

only those suggested legal bases for sanctions. Section 1927, 28 U.S.C. §1927,

provides: "[a]ny attorney . . . who so multiplies the proceedings in any case

unreasonably and vexatiously may be required by the court to satisfy personally

the excess costs, expenses, and attorneys' fees reasonably incurred because of

such conduct." 28 U.S.C. § 1927. Although some courts have ruled otherwise,

Bankruptcy Courts in the Third Circuit have the power to impose sanctions

against an attorney under Section 1927. <u>In re Schaefer Salt Recovery, Inc.</u>, 542

F.3d 90, 105 (3d Cir. 2008) (although a bankruptcy court is not a court of the

United States, it is a unit of the district court and therefore has the authority to

impose sanctions under Section 1927). <u>See also</u> <u>Baker v. Latham Sparrowbush</u>

Assoc. (In re Cohoes Indus. Terminal, Inc.), 931 F.2d 222, 230 (2d Cir. 1991)

(concluding without discussion that a "bankruptcy court may impose sanctions

pursuant to 28 U.S.C. § 1927"). By its terms, Section 1927 authorizes sanctions

against attorneys for conduct similar to Croslis' actions and inactions. Loftus v.

Southeastern Pennsylvania Transp. Auth., 8 F. Supp. 2d 458, 461 (E.D. Pa.

1998); Coquico, 508 B.R. at 941. I therefore have the power to award sanctions

against Croslis pursuant to Section 1927.

It bears repeating that Croslis refused to attend two hearings that

were scheduled specifically to allow me to focus on his cases. He provided only

limited information relating to the fate of his clients. I have no testimony from

Croslis about the history of his cases from their inception to the present status of

each debtor. I have no evidence or argument from Croslis suggesting a valid

rationale for his conduct. The failure of a party, such as Croslis, to appear and

testify at a hearing may lead to a negative inference being drawn against that

party. Carroll v. Unicom AP Chemical Corp., (In re MGL Corp.), No. 00-10804,

00-10803, 00-10805, 00-933, 2001 WL 204729, at *3 (Bankr. E.D. Pa., Feb. 5,

2001). In MGL, the learned Judge Diane W. Sigmund ruled:

> It has been long established that "if a party has it peculiarly
> within his power to produce witnesses whose testimony would
> elucidate the transaction, the fact that he does not do it creates the
> presumption that the testimony, if produced, would be unfavorable."

<u>Id.</u> , <u>citing</u> <u>Graves v. United States</u>, 150 U.S. 118. 121 (1893); <u>Greyhound Lines,</u>

<u>Inc. v. Peter-Pan Bus Lines, Inc.</u>, 845 F. Supp. 295, 301 (E.D. Pa. 1994). Croslis

had it uniquely within his power to testify and explain, <u>inter alia</u>, why he did

what he did with his clients, how they benefitted from his efforts, what plans (if

any) he had for extricating them from bankruptcy, why I should find that his

filings had some bankruptcy purpose or goal, and why I should find that his

clients' bankruptcies were intended to accomplish more than delaying state court

proceedings. He failed to testify in any respect in the 2017 hearings.

   To sanction an attorney under Section 1927, I must find that he has

"'(1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3)

thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by

intentional misconduct.'" <u>Schaefer Salt Recovery</u>, 542 F.3d at 101(quoting <u>In re</u>

<u>Prudential Ins. Co. Amer. Sales Prac. Litig.</u>, 278 F.3d 175, 188 (3d Cir. 2002);

<u>see</u> <u>also</u>  <u>Hackman v. Valley Fair</u>, 932 F.2d 239, 242 (3d Cir. 1991); <u>Argus Grp.</u>

<u>1700, Inc. v. Steinman</u> (<u>In re Argus Grp.1700, Inc.</u>), Civil Action Nos. 96-8011,

96-8244 and 96-8618, 1997 WL 87623, at *2 (E.D. Pa. Feb. 20, 1997). Across

his Thirteen Cases (plus the other three), Croslis satisfied each element through

his conduct in these cases.

Of particular relevance here, the Third Circuit has held that the "intentional advancement of a baseless contention that is made for an ulterior purpose, e.g., harassment or delay" may be indicative of bad faith. <u>Ford v. Temple Hospital</u>, 790 F.2d 342, 347 (3d Cir.1986). Croslis' initial filing and advancement of the Thirteen Cases with no intention to do anything more than stopping state court litigation and sheriffs' sales, together with Croslis' general bad faith, misrepresentations, and repeated failure to file required documents and attend hearings, support sanctions under Section 1927. Croslis' filing of the bankruptcies in these cases was intended solely to delay the progress of state court litigation or sheriff's sales or both. Croslis' bad faith and intentional misconduct is both implied by me from his actions and failure to justify them and is imputed to him in all of these cases.

# IV. <u>CONCLUSION</u>

As requested in the UST Motion, and based upon the discussion above, I will order Croslis to provide certain information that should not be difficult to obtain by the counsel for clients who have filed Chapter 13 bankruptcies. I will also impose sanctions against him. Following are various remedies that I will order in an accompanying order:

61

1. In all of the above cases, Croslis shall provide an accounting (in the form of an expanded application for fees) of all money either he or his firm (a) charged to his clients, (b) received from or promised by his clients to be paid, and (c) was actually earned by Croslis or his firm, which accounting shall include full, itemized descriptions of (A) all tasks performed (whether for bankruptcy services or for other (e.g., mortgage) issues) for each debtor; (B) the time incurred by each attorney, paralegal, or anyone from his firm or office for each task for each client; (C) the written fee statement he or his law firm had with all of his clients[28]; and (D) whether (i) he took all payments that he received immediately as fees or (ii) held all or some payments in an attorney's escrow account;

2. I will deny all of Croslis' or his law firm's fee applications in the above cases;

3. Croslis shall identify every case for which either he or his clients have obtained the services of replacement counsel to represent his clients in their bankruptcies (whether in any of the above cases or by filing new cases) and in every such case, Croslis shall

---

[28]    Pa. R. Prof. Cond., Rule 1.5(b).

identify (a) how much replacement counsel is charging his
former clients and (b) the amount of all funds that he or his firm
paid or promise to pay to such replacement counsel;

4. Croslis shall expressly contact his former clients who do not have
new counsel in these cases to assist them in obtaining new
counsel;

5. Croslis shall disgorge and refund to his clients all fees that they
paid to him in all of the above-captioned cases and shall file a
certification of such disgorgement on the dockets of the Court,
with a copy to the UST;

6. I will enjoin Croslis from further violations of Sections 526 and
1307(c) of the Bankruptcy Code;

7. I will sanction Croslis by imposing a mild sanction/civil penalty
for his violations of the Bankruptcy Code, for his actions in
improperly delaying state court litigation or sheriff's sales, and
for his contemptuous disregard of this Court and my Orders,
indicated by his refusal or failure to file required documents and
to appear at hearings, despite being so directed; and

8. I will order Croslis to reimburse Ms. Rusyn $60 for her mileage
and parking for the November 3, 2016 hearing that she attended.

If Croslis performs all of the tasks in the accompanying order as and when ordered, he will be well on his way to rehabilitating his professional status as well as his standing in this Court. I will schedule a further hearing to review the UST Motion, my order to show cause, and Croslis' compliance with this Order.

DATE:  May 24, 2017

BY THE COURT

Richard E. Fehling
U.S. Bankruptcy Judge